# CHARLESTON.

A. B. THOMPSON, *who sues etc.* v. GRANT P. HALL, *State Tax Commissioner et al.*

(No. 5689)

Submitted January 25, 1927.    Decided June 7, 1927.

1.  LICENSES—*Statute Requiring License Tax of One Operating Prohibited Gaming Device is Invalid, as Against Public Policy (Code, c. 32 § 1).*

    A statute requiring a license tax of one operating a gaming device prohibited by law is invalid and unenforceable as against public policy.   (p. 77.)

    (Licenses, 37 C. J. § 48 [Anno].)

2.· SAME—*Operator of Illegal Gaming Device May Not Enjoin
     Collecting License Tax Under Statute, but Will be Left to
     Legal Remedy (Code, c. 32, §§ 1, 42a).*

The equitable maxim, "He who comes into Equity must come
with clean hands", will be applied to the operator of an
illegal gaming device seeking by injunction to restrain the
collection of a license tax required by statute of those en-
gaging in such business.   (p. 79).

(Equity, 21 C. J. §§ 163, 178 ; Licenses, 37 C. J. § 136.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not
part of syllabi.)

Appeal from Circuit Court, Mercer County.

Suit by A. B. Thompson against Grant P. Hall, State Tax
Commissioner, and others for an injunction.   From a judg-
ment for plaintiff, defendants appeal.

*Reversed.*

*John T. Simms,* for appellants.
*A. J. Lubliner* and *John Kee,* for appellee.

LITZ, JUDGE:

This is a suit to enjoin the collection of an authorized license
tax.   On final hearing the circuit court perpetually enjoined
the defendants, Grant P. Hall, State tax commissioner, and
R. C. Lilly, deputy State tax commissioner, and all other
deputies, agents, employees, and representatives of said State
tax commissioner ''from collecting by any proceeding what-
soever any tax, assessment, license or other charge from the
plaintiff, upon and for the sale of any goods, wares, chattels,
or merchandise by means of certain donation cards or 'punch
boards' owned, furnished and delivered to the said plaintiff
by Bluefield Lodge No. 269, Benevolent and Protective Order
of Elks, of Bluefield, West Virginia''.   The defendants appeal.

The bill shows that the plaintiff is a member of a volun-
tary fraternal and charitable organization, known as the Blue-
field Lodge No. 269, Benevolent and Protective Order of
Elks, composed of 1,800 members with headquarters at Blue-
field, Mercer County, West Virginia; that with the view of
securing funds for its charitable purposes, by the operation
of ''punch boards'', whereby articles of merchandise of differ-

ent values are awarded to those buying chances on the boards, the lodge obtained from the tax commissioner, through his deputy, R. C. Lilly, a license in words and figures following, to-wit:

No. 23210                    (Form S. T. C. 42A)
                                              $16.67
STATE OF WEST VIRGINIA
June 20, 1863
State of West Virginia
(Seal)
Montani Semper Liberi

Office of State Tax Commissioner, ss:

"This is to certify that the undersigned, in pursuance of the authority vested in him, by Section 42a of Chapter 32 of the Code, as enacted by the regular session of the Legislature of 1909, has this day granted to Elks Club (No. 269) of Bluefield, Mercer County, West Virginia, a license to operate Punch Board on second floor of Elks Bldg. Beginning 15th day of November, 1925, and ending 15th day of February, 1926, and has assessed and collected the license tax of $16.67 Dollars, and a penalty of ............................ Dollars.

Given under my hand this 30th day of November, 1925.

GRANT P. HALL,
State Tax Commissioner,
By R. C. Lilly, Deputy.

NOTE: It is distinctly understood that the issuance of this certificate and the payment of the license tax assessed does not legalize any act which otherwise may be in violation of law or exempt any person or firm from any penalty for such violation.

That the plaintiff, as an agent of the Lodge, operated a punch board in Mercer County (outside the Lodge building) within the period covered by said license; and that the defendant, R. C. Lilly, deputy tax commissioner, has demanded of the plaintiff and other members of the organization operating punch boards for its benefit, a license tax of $5.00 each, by virtue of Section 1, Chapter 32, Code, providing that:

> "No person without a State license therefor,
> shall * * * (e) run or operate, for profit, a merry-
> go-round, or roller coaster, or scenic railway, or
> like device, or keep for public use or resort, a
> shooting gallery, skating rink; or run, or operate a
> cane rack, doll-baby rack, knife rack, striking
> machine, jingle board, *punch board*, artful dodger,
> candy wheel, or other scheme or device by which
> merchandise or other things of value are disposed
> of by game of chance, or like device, * * *
> "Provided, that nothing in this chapter con-
> tained, and no license or payment under the pro-
> vision hereof, shall be taken to legalize any act
> which otherwise may be in violation of law, or ex-
> empt any person from any penalty prescribed for
> such violation."

To support the decree of the circuit court the plaintiff relies
mainly upon the ground that punch boards are gaming de-
vices, the operation of which constitutes a crime. It is not
denied that the operation of punch boards, with or with-
out license, is unlawful, but the defendants say that the plain-
tiff may not rely upon his own violation of the law as ground
for relief in equity.

There is considerable authority holding that the State may
levy a license tax on an unlawful business. This is per-
mitted upon the theory that the tax is intended as a penalty
in addition to that prescribed by the criminal law and will,
therefore, tend to discourage the business. We do not concur
in this view but, on the contrary, are of opinion that the
statute requiring a license tax for the operation of gaming
devices in this State has increased rather than lessened the
pernicious practice, because in many instances, if not as a
general rule, the criminal law is not enforced against the
operators of gaming devices holding licenses. For this reason,
the statute is against public policy, as tending to encourage
crime and create disrespect for the criminal laws; and is,
therefore, invalid and unenforceable.

There is, however, no exception whereby the plaintiff may
evade application of the legal maxim that "he who comes

into equity must come with clean hands''. He is left to his remedy at law.

The decree of the circuit court is reversed and the bill dismissed.

*Reversed.*