JOHN E. HARMS, DOING BUSINESS AS HARMS LUMBER COMPANY, APPELLANT, V. SCHOOL DISTRICT NUMBER 2, GAGE COUNTY, APPELLEE.

298 N. W. 549

FILED JUNE 6, 1941. No. 31134.

*I. D. Beynon* and *John R. Dudgeon,* for appellant.

*Jack & Vette, contra.*

Heard before PAINE, CARTER and MESSMORE, JJ., and SPEAR and FALLOON, District Judges.

SPEAR, District Judge.

The plaintiff, appellant in this court, seeks to recover for materials and services furnished to the defendant school district, appellee here, for partially erecting a school building.

Prior to June 8, 1936, notice had been duly made and posted for the requisite length of time that there would be submitted at that meeting the question of changing the school site and levying a tax for building a new schoolhouse on a new site. The old site had been used since 1873 and is less than three-quarters of a mile from the geographical center of the district by direct length about 20 rods. The

meeting was duly held, a vote was taken, the question of changing the location passed 25 to 19 and the question of levying the tax passed 24 to 20, neither vote being two-thirds of the number of electors present. Pursuant to that vote the electors appointed a building committee and, together with two members of the school board, this committee, on August 6, 1936, entered into a contract with the plaintiff for the materials to be used in the erection of the new schoolhouse on the new site. This material was delivered to the new school site and part of the material was used by the school district in constructing the basement. There seems to have been a controversy among the electors of the school district all the way through, and on August 12, 1936, the Harms Lumber Company received a notice from Mr. Fulton Jack, attorney for one faction, directing the company not to deliver any more material. No more material was delivered except some minor items necessary for the preservation of the walls of the basement which were practically completed at that time. Before this, the school authorities consulted Mr. Sackett, also an attorney, and he advised them to go ahead with the building until they were stopped, stating that it was their duty to carry out the wishes of the electorate as voted in the school election. As we understand it, nothing further has been done on the building to this day.

In addition to the material furnished by Harms, a little material was bought from the Farmers Elevator Company of Adams and a contract was made with Walter Barmore to construct the building. Both of these claims have been assigned to the Harms Lumber Company and are included in this action, under the same theory.

The appellee contends that the schoolhouse is being built in contravention of two sections of the statutes which are as follows:

"The qualified voters in the school district, when lawfully assembled, shall have power to adjourn from time to time, as may be necessary, to designate a site for a schoolhouse by a vote of two-thirds of those present, and to change the

same by a similar vote at any annual meeting: Provided, in any school district where the schoolhouse is located three-fourths of one mile or more from the center of such district, such schoolhouse site may be changed to a point nearer the center of the district by a majority vote of those present at any such school meeting." Comp. St. 1929, sec. 79-208.

"The legal voters may also, at any annual or special meeting, determine the number of mills, not exceeding ten mills on the dollar of the assessed valuation, which shall be expended for the building or building an addition thereto, purchase, or lease of a schoolhouse, in said district, when there are no bonds voted for such purpose, which amount shall be reported, levied and collected as in the preceding section: Provided, upon petition of one-fourth of the legal voters of such district to the trustees at least twenty days before time of annual or special meeting, praying that the question of voting a tax to create a special fund for the erection of a schoolhouse in said district be submitted to the qualified voters at such annual or special meeting, the trustees shall include such question in the posted notices of business to be considered at such annual or special meeting." Comp. St. 1929, sec. 79-216.

This action is not brought upon the contract, but for the value of materials and services. The appellee contends that the acts of the school board and the building committee are *ultra vires* and that plaintiff therefore can recover neither on the contract nor *quantum meruit* because of the lack of a two-thirds vote, under section 79-208, and because of technical defects, under section 79-216. The district court found for defendant.

We have examined all Nebraska authorities cited by appellee. Most of the cases cited are not applicable here because they are not cases involving either the question of contract or *quantum meruit,* but are cases involving injunctions, mandamus actions and other forms of action to which the rules which are involved in this case do not apply. We find six cases cited by appellee which in some measure touch upon the question which is now before us. These

cases are: *Townsend v. Holt county*, 40 Neb. 852, 59 N. W. 381; *Gutta-Percha & Rubber Mfg. Co. v. Village of Ogalalla*, 40 Neb. 775, 59 N. W. 513; *Tullock v. Webster County*, 46 Neb. 211, 64 N. W. 705; *Rogers v. City of Omaha*, 76 Neb. 187, 107 N. W. 214; *Miles v. Holt County*, 86 Neb. 238, 125 N. W. 527. The *Townsend* case was a case arising out of a contract, but from a reading of the opinion it is impossible to ascertain whether the suit was brought upon the contract or for the value of the materials furnished. The *Ogalalla* case was a suit upon a contract and the court specifically points out the difference between such an action and an action for the value of goods delivered. The appellee relies largely upon the *Tullock* case, but the *Tullock* case discusses only the question of the enforcement or ratification of a contract, as is pointed out by Judge Sullivan in the final paragraph of *Lincoln Land Co. v. Village of Grant*, 57 Neb. 70, 77 N. W. 349. The case of *Rogers v. City of Omaha*, *supra*, was a case brought upon a contract, but the *quantum meruit* theory was discussed and approved by this court, as it was in the case of *Miles v. Holt County*, *supra*.

The appellant contends that the school district has general authority to build a schoolhouse, and the district retaining the materials, there may be a recovery for the reasonable value of materials furnished, even though the statutory requirements have not been carried out in making the contract. In support of this proposition appellant cites *Lincoln Land Co. v. Village of Grant*, 57 Neb. 70, 77 N. W. 349; *Western Chemical Co. v. Board of County Commissioners*, 130 Neb. 550, 264 N. W. 699; *Omaha Road Equipment Co. v. Thurston County*, 122 Neb. 35, 238 N. W. 919; *Stickel Lumber Co. v. City of Kearney*, 103 Neb. 636, 173 N. W. 595; *Sorensen v. Chimney Rock Public Power District*, 138 Neb. 350, 293 N. W. 121.

We find no unequivocal statement in any of the Nebraska cases cited by appellee to sustain its position. On the other hand, it seems to us that the cases cited by both sides support the position of the appellant. There are several sections of the statutes giving general power to school districts to

build schoolhouses. Having general power, the action of the school authorities was not *ultra vires*. It may have been illegal or without authority, but under the doctrine announced in the cases cited by appellant, we think that it no doubt was within the power granted to the school district by the legislature. It is stated in the *Stickel Lumber Company* case, quoting from another case, that, "properly speaking, *ultra vires* contracts of a municipal corporation are such as the corporation has no power to make under any circumstances or for any purpose. A contract of a municipal corporation is *ultra vires* in its proper sense when it has no power under the existing legislation under any circumstances to enter into such contract." Applying this rule to the case at bar, we believe that the contract entered into by the school authorities is not *ultra vires*.

REVERSED.

MESSMORE, J., not participating.