ROUSH, Respondent, v. ESMOND, Appellant

(43 N. W.2d 547)

(File No. 9096. Opinion filed July 26, 1950)

Rehearing denied September 28, 1950

**Harry J. Eggen,** De Smet, **Davenport, Evans, Hurwitz & Smith,** Sioux Falls, for Defendant and Appellant.

**Royhl & Benson,** Huron, for Claimant and Respondent.

SMITH, J.   Whether the proof established the relation of employer and employee between the town of Esmond, a municipal corporation of the third class, SDC 45.0102, and the claimant, Cecil Roush, is the principal question presented by this appeal from an award of workmen's compensation under the provisions of SDC 64.

The town of Esmond had formerly operated an electric utility.   The system had been abandoned in anticipation of service to the community by an REA project.   From con-

flicting testimony the Industrial Commissioner was justified in believing the following facts. While all of the members of the governing body of the town were together at the place of business of one of their number, it was informally agreed that the poles and wires of the abandoned muncipal system should be removed from the streets and that eighty cents per hour should be paid for the work. No minutes were made of this meeting. Several weeks thereafter one of the members of the board told Cecil Roush to go ahead with the work on that basis. It was understood that he was to secure a helper. He was directed to remove the wire and wind it up, and to pile the poles on a vacant lot. A second member of the board talked with him about the best method of doing the work just before he started the task. A third member of the board worked with Roush. Thus all of the members of the board knew he was undertaking the work before he did anything. Within about two hours after Roush commenced working, he ascended a ladder he had placed against a pole; the pole gave way; and he fell to the ground. A very serious spinal injury resulted.

Predicated upon these facts the Industrial Commissioner determined that Roush was in the service of the town of Esmond under a contract of employment at the time of his injury and made a substantial award of compensation. On appeal to the circuit court a modification of the award was directed, and as modified the award was affirmed. The town has appealed.

■ The statutes dealing with workmen's compensation provide that the term "employer" shall include any municipal corporation within the state and define an "employee" as "every person, including a minor, in the services of another under any contract of employment, express or implied", except certain persons described in the statute. SDC 64.0102. The decisions which construe these statutes hold that the existence of the contractual relation of employer and employee, except in certain instances not here involved, is essential to recovery of workmen's compensation in this jurisdiction. Bergstresser v. City of Willow Lake, 63 S.D. 386, 259 N.W. 276; Schumacher v. Schumacher, 67 S.D. 46, 288 N.W. 796.

■ We understand respondent's brief to concede that these provisions have reference to a contract express or implied in fact as defined by SDC 10.0601, as follows, "An express contract is one, the terms of which are stated in words. An implied contract is one, the existence and terms of which are manifested by conduct." We entertain the view that the relation of employer or employee can only arise out of a contract, either express or implied in fact.

The contention that the facts we have detailed are not sufficient in law to establish the essential contractual relation of employer and employee centers around the provision of SDC 45.0107 reading as follows: "Contracts of a municipality shall not be valid unless authorized by a vote of the governing body at a duly assembled meeting thereof." We have reluctantly arrived at the conclusion that the facts fail to show such an effective authorization by the governing body of the town of Esmond as is essential to the existence of either an express or an implied contract of employment.

It is the contention of claimant that a contract for the work of removing the poles and wires was authorized at the described meeting of the members of the board and that the validity of a contract, express or implied, made pursuant thereto does not depend upon a record of the meeting in the minutes of the board. We shall consider that contention.

The provision we have quoted from SDC 45.0107 must be looked at in its relation to other statutes dealing with our municipal corporations, and certain of the decisions of this court.

By SDC 45.1008 it is provided: "The word 'resolution' as used in this title shall mean any determination, decision, or direction of the governing body of a municipality of a special or temporary character for the purpose of initiating, effecting, or carrying out its administrative duties and functions under the laws and ordinances governing the municipality."

By SDC 45.1009 it is provided: "A resolution may be passed after one reading. It shall be recorded at length in the minutes of the meeting at which it is passed, with a

statement of the number of votes for and against the same. It shall be published in full as part of the minutes."

By SDC 45.0101(8) it is provided: "Any requirement for publication shall mean publication in the official newspaper of the municipality concerned or affected, if any; but if none, then in a legal newspaper published in such municipality, if any; but if none, then by posting in three of the most public places in the municipality during the period required for publication but for not less than ten days prior to the hearing or event or lapse of the time fixed."

By SDC 45.1116, as amended by Ch. 164, Laws of 1943, it is provided: "The governing body of every city, town and village shall cause to be published in the official newspaper therein, or, if no official newspaper has been designated therein, in any legal newspaper published within such city, town or village, within thirty days after each meeting thereof a full account of the proceedings at such meeting, giving a detailed statement of all expenditures of money, the names of the persons to whom payment is made, and showing the service rendered therefor. * * *" Subsequently amended by Ch. 202, Laws of 1947.

By SDC 45.1010, it is provided: "Except such resolutions or ordinances as may be necessary for the immediate preservation of the public peace, health, or safety, or support of the municipal government and its existing public institutions, which take effect upon the passage and publication thereof, every resolution or ordinance passed by the governing body shall take effect on the twentieth day after its publication unless suspended by operation of a referendum."

By SDC 45.1011 provision for a referendum is made in words as follows: "The required number of qualified electors residing in any municipality may file within twenty days after publication of any ordinance or resolution subject to referendum a petition with the auditor or clerk, requiring him to submit any such ordinance or resolution to a vote of the electors of the municipality for its rejection or approval.

"A special election shall be held for the purpose within thirty days after the filing of such petition; except that when such petition is filed within three months prior to the an-

nual municipal election, such ordinance or resolution shall be submitted at such annual election if there is time to give notice thereof." Subsequently amended by Ch. 198, Laws of 1947.

The acts of a governing body of a municipality which are subject to the foregoing provisions and to referendum were considered in State ex rel. Wagner v. Summers, 33 S.D. 40, 144 N.W. 730, 50 L.R.A., N.S., 206, Ann.Cas.1916B, 860, and in State ex rel. Martin v. Eastcott, 53 S.D. 191, 220 N.W. 613, 614. In the Eastcott case it was written:

"Cases like Murphy v. Gilman, 204 Iowa 58, 214 N.W. 679, in which distinction is made between acts of municipal bodies which are legislative in character and acts which are only administrative, and hold that only legislative acts are subject to the referendum, are of no aid in solving the question in this case because our statutes, which define an ordinance as 'a permanent legislative act of the governing body of a municipal corporation within the limits of its powers,' and a resolution as 'any determination, decision or direction of the governing body of a municipal corporation, of a special or temporary character, for the purpose of initiating, effecting, or carrying out its administrative duties and functions under the laws and ordinances governing the municipality,' provide that both ordinances and resolutions 'except such as may be necessary for the immediate preservation of the public peace, health or safety, or support of the municipal government and its existing public institutions' are subject to the referendum. * * *"

And in the Summers case, supra, where an informal motion granting a permit to sell intoxicating liquor was in question, it was held that such a motion was a determination of the governing body and that the terms, motion and resolution, are synonymous. It was further held in that case that the court is not a liberty to place a limitation upon the decisions and determinations of the municipal governing bodies which are rendered subject to referendum by the sweeping provisions of our statutes.

■ The quoted statutes and the cited pronouncements of this court impel a conclusion that the decision or determ-

ination of a governing body of a municipality to authorize a municipal contract is subject to referendum.

■ ■ When the quoted provisions of statute are considered as a whole in the light of this conclusion that a determination of the governing body of a municipality to authorize a contract is subject to referendum, we think they plainly reveal a legislative intention to place a limitation upon the power of our municipalities to make contracts. The aim of these statutes is not merely to provide for orderly procedure and a dependable record. Their purpose is to assure timely notice to the electors of the administrative decisions and determinations of the governing body, and a full and fair opportunity to refer its decisions to the voters for approval or rejection. Without a record of a motion or resolution and its subsequent publication, notice and opportunity for a referendum cannot be assured. The provision of SDC 45.1010 that "every resolution or ordinance * * * shall take effect on the twentieth day after its publication * * *" indicates an intention to provide a mandatory procedure. And that such an effective decision to authorize a municipal contract is essential to validity is expressly provided by SDC 45.0107.

■ ■ If the members of this governing body intended to act officially when they agreed to have the electric distribution system dismantled, they failed to act effectively because they did not comply with these mandatory provisions of statute. Their decision was neither recorded nor published and, of course, claimant was bound to know the extent of the powers of the municipality and the authority of its officers and agents. Treadway v. Schnauber et al., 1 Dak. 236 [227], 46 N.W. 464.

With the foregoing conclusion in mind we turn to Seim v. Independent District of Monroe, 70 S.D. 315, 17 N.W.2d 342. In that case, a board of education, without calling for bids as required by SDC 15.2024, entered into an agreement with a contractor, who was engaged in building a school house for the district, for additional work and material made necessary by a change in the plan. The action was on the agreement for the agreed price, and the question was as to the validity of the contract. In determining that the agree-

ment made was beyond the power of the district, and that the contractor could not recover for benefits received by the district, this court quoted with approval from Miller v. McKinnon, 20 Cal.2d 83, 124 P.2d 34, 39, 40 A.L.R. 570, as follows:

" 'Undoubtedly a school board, like a municipal corporation, may, under some circumstances, be held liable upon an implied contract for benefits received by it, but this rule of implied liability is applied only in those cases where the board or municipality is given the general power to contract with reference to a subject-matter, and the express contract which it has assumed to enter into in pursuance of this general power is rendered invalid for some mere irregularity or some invalidity in the execution thereof, and where the form or manner of entering into a contract is not violative of any statutory restriction upon the general power of the governing body to contract nor violative of public policy. In the absence of such restriction on the mode or manner of contracting, the same general rule applies to such inferior political bodies as to individuals, and the former will be held responsible on an implied contract for the payment of benefits it receives under an illegal express contract not prohibited by law. * * * But, while the doctrine of implied liability applies where general power to contract on a subject exists and the form or manner of doing so is not expressly provided by charter or statute, the decided weight of authority is to the effect that, when by statute the power of the board or municipality to make a contract is limited to a certain prescribed method of doing so, and any other method of doing it is expressly or impliedly prohibited, no implied liability can arise for benefits received under a contract made in violation of the particularly described statutory mode. Under such circumstances the express contract attempted to be made is not invalid merely by reason of some irregularity or some invalidity in the exercise of a general power to contract, but the contract is void because the statute prescribes the only method in which a valid contract can be made, and the adoption of the prescribed mode is a jurisdictional prerequisite to the exercise of the power to contract at all, and can be exercised in no other manner so as to in-

cur any liability on the part of the municipality. Where the statute prescribes the only mode by which the power to contract shall be exercised, the mode is the measure of the power. A contract made otherwise than as so prescribed is not binding or obligatory as a contract, and the doctrine if implied liability has no application in such cases.'" [70 S.D. 315, 17 N.W.2d 344]

■ The rule of the Seim case is controlling here. The power of the town of Esmond to contract for the removal of the poles and wires from its streets was limited by the statutory provisions we have quoted. In the absence of an authorization by the governing body in compliance with these mandatory provisions of statute, the attempted agreement with claimant, whether viewed as expressed, or implied in fact, was void. Hence the essential relation of employer and employee did not exist when claimant met his unfortunate accident.

■ The suggestion is made that these statutes are not applicable because the town was dealing in a proprietory capacity in dismantling its electric utility. The legislature has not indicated an intention to exclude proprietory municipal functions from the embrace of these statutes. The obvious purpose of this legislation is to provide means by which the voters may exercise some direct control of municipal affairs. It would, we think, be unreasonable to conclude that only control of governmental affairs was intended. We entertain the view that the advocated holding would constitute judicial legislation.

Earnest search for a judicial formula which will afford protection to one positioned as we find the claimant without undermining the legislative policy revealed by these statutes has been unavailing. Therefore, the judgment of the trial court is reversed.

HAYES, P.J., and ROBERTS and RUDOLPH, JJ., concur.

SICKEL, J., dissents.

SICKEL, J., (dissenting). Respondent contends in his brief that he "was employed [by the town] under an implied contract" and argues the point at length. Respondent's brief

pages 2 to 12. The question is whether claimant was an employee of the town, not whether the town had legally authorized the removal of the municipal light and power lines.

Under the provisions of the workmen's compensation law "employer" includes any municipal corporation. An "employee' is "every person, including a minor, in the services of another under any contract of employment, express or implied * * *". SDC 64.0102, amended ch. 313, S.L. 1943.

The relationship of employer and employee between a municipal corporation and any other person may be created by an implied contract. Bergstresser v. City of Willow Lake, 63 S.D. 386, 259 N.W. 276; Gulbrandson v. Town of Midland, 72 S.D. 461, 36 N.W.2d 655.

Whenever services are rendered and voluntarily accepted a contract of hiring and an obligation to pay compensation therefor is implied in law. In this case the failure to record the decision of the town board bars any claim of express contract, but the evidence shows that the services were rendered to the town by claimant, and were voluntarily, knowingly and intentionally accepted by the governing body of the town.

In my opinion the claimant was an employee of the town under an implied contract at the time of his injury. He was injured in the course of his employment and is entitled to workmen's compensation. Decisions of this court relating to contracts not within the scope of the workmen's compensation law are inapplicable.